**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| L.P.P.R., INC. and LEHIGH PRESS PHARMACEUTICAL PRODUCTS, INC. | : : : | CIVIL ACTION |
| Plaintiffs, v. | : : : | |
| KELLER CRESCENT CORPORATION and CLONDALKIN GROUP, INC. | : : : | NO.   10-2872 |
| Defendants. | : | |

**Baylson, J.** September 30, 2011

## I.   Introduction

Plaintiffs L.P.P.R., Inc. and Lehigh Press Pharmaceutical Products, Inc. filed this action against Defendants Keller Crescent, Corp. ("Keller") and Clondalkin Group, Inc.[1], seeking money damages for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and, in the alternative, unjust enrichment.[2]  Defendants moved for partial summary judgment (ECF No. 32).

For the following reasons, Defendants' motion will be granted in part and denied in part.

## II.   Factual Background

The Puerto Rican government offers tax credits to induce a purchaser of a distressed Puerto Rican business to continue operations in Puerto Rico.  Plaintiffs are Puerto Rican Corporations that had not been profitable for some time.  The parties, through two substantially

---

[1] Clondalkin Group, Inc. guaranteed the performance of Keller, and Keller's obligations, under the Contract.

[2] Plaintiffs made two additional claims, one of which was stricken from the Amended Complaint as moot (ECF No. 25), the other (a request for an accounting) is not a subject of this motion.

identical Asset Purchase Agreements ("the Contract"), agreed to purchase assets from Plaintiffs. The Contract also provided that Keller would sell the potential tax credits and the parties would share the net proceeds from the sale.

In relevant part, the Contract states:

4.04 Tax Credits.

(a) Seller and Purchaser hereby covenant and agree to share the net proceeds (i.e., net of costs incurred by Purchaser in connection with collecting and selling such tax credits) from the sale by Purchaser of any Industrial Investment tax credits . . . 90% of such proceeds for the account of Seller; 10% of such proceeds for the account of Purchaser.

Additionally, the Contract required Keller (the Purchaser) to notify Plaintiffs of the existence of a potential buyer for the tax credit and of the terms of the sale. It further stated that "Purchaser's execution of the sale of the Credit shall be subject to Seller's approval."

Keller eventually found a potential buyer willing to purchase the tax credit for 85% of its face value. Keller's representative contacted Plaintiffs' representative over e-mail. In two e-mail exchanges, Plaintiffs' representative conditioned approval of the sale upon his understanding of the amount of funds coming to Plaintiffs through the deal (i.e. "the proceeds would be $1,785,000 of which $1,606,500 would be paid to sellers. If that is accurate for sellers [sic.] proceeds, the sellers consent.") Keller's representative did not confirm or deny the stated amount. Keller's representative again sought consent from Plaintiffs' representative, who replied "[t]he 85% is fine. . . . Take this e-mail as approval."

Defendants then sold the tax credit and wired $1,133,587 to Plaintiffs, rather than $1,606,500. Plaintiffs seek the difference.

**III.     The Parties' Contentions**

Defendants move for partial summary judgment on the issue of contract interpretation.

**A.     Breach of Contract**

Defendants contend that they did not breach the Contract. Rather, they assert that Plaintiffs are only entitled to the $1,133,587 they received, which constitutes 90% of the proceeds of the sale of the tax credits after netting out the costs of obtaining the tax credit and the costs of selling the tax credit. They argue that, in the Contract's phrase "net of costs incurred by Purchaser in connection with collecting and selling such tax credits," "collecting" unambiguously refers to securing or obtaining the tax credit from the Puerto Rican tax authorities. Therefore, they reason, they were permitted to subtract these costs before wiring 90% of the remaining proceeds to Plaintiffs.

Plaintiffs respond that "collecting" is ambiguous and therefore an issue of fact for the jury. Plaintiffs assert there is abundant evidence that there is more than one reasonable interpretation of "collecting" and that the parties' intent differed as to the meaning of the term. They interpret the costs of collecting to mean "costs incurred in collecting the proceeds of selling the tax credits." These costs would include, for example, bank transfer fees and the cost of pursuing payment if the buyer refused to pay in a timely fashion. Plaintiffs maintain that one cannot "collect" a tax credit, and that Keller's interpretation of "collect" runs afoul of its previous assertion that it wished to deduct the costs incurred in "securing and sale of Tax Credit" and other conduct by Keller. Plaintiffs also challenge the actual costs that Keller deducted. These include hundreds of thousands of dollars in fees that Plaintiffs say Keller never paid, legal fees associated with researching how to create and issue the tax credits, and costs incurred before

the Contract was created. Plaintiffs also contend that because Defendants did not move for summary judgment on the issue of calculating the costs, their motion would not narrow the issues for trial and must therefore fail.

Defendants reply that Plaintiffs' interpretation of "collecting" is unreasonable and that Plaintiffs offer no support for their assertion that "collecting" cannot mean obtaining or securing a tax credit. Defendants attach thesaurus entries of "collect" indicating that it is a synonym of these terms. Defendants also argue that the costs they deducted were legitimate costs, including a required yearly bond premium (some of which has been paid, and some of which will be paid over the next several years).

### B.     Promissory Estoppel

Defendants argue that Plaintiffs' promissory estoppel claim must fail because Defendants never made Plaintiffs the requisite clear and unambiguous promise that they would receive $1.6 million. Rather, in response to Plaintiffs' representative's e-mail assertions that Plaintiffs would receive that amount, Keller's representative remained silent. Furthermore, Defendants argue, Keller's representative had no duty, which could arise from a special relationship the likes of which did not exist here, to correct Plaintiffs' representative's numbers.

Plaintiffs respond that there is a factual dispute over what their representative approved with respect to the sale of the tax credit. Although in the final e-mail, Plaintiffs' representative stated "[t]ake this e-mail as approval," Plaintiffs contend that this must be read in the context of the chain of e-mails conditioning the approval of the sale on receiving $1.6 million in proceeds. Citing non-Delaware cases, Plaintiffs argue that a jury could find that because (a) the Contract required Plaintiffs' approval of the terms of sale, (b) Plaintiffs conditioned their approval on

receipt of $1.6 million, and (c) Keller's representative did not correct Plaintiffs' representative, that Keller's representative made an implied promise.

### C.   Implied Covenant of Good Faith and Fair Dealing

Defendants assert that this claim must fail as a matter of law because Delaware law will never imply a covenant where the contract addresses the subject at hand – here, what would be netted from the proceeds of the sale after issuing Plaintiffs a 90% share.

Plaintiffs respond that this claim must survive because Keller acted arbitrarily and unreasonably in failing to inform Plaintiffs that Keller was going to deduct $500,000 of expenses from the net proceeds, including costs that Keller had never paid.

### D.   Unjust Enrichment

Finally, Defendants contend that Plaintiffs' claim for unjust enrichment cannot survive because a valid contract governs the parties' relationship.  Such claims are only appropriate when the validity of the contract is doubtful or uncertain, they argue.

In response, Plaintiffs proffer only that summary judgment on this claim is inappropriate because they brought this claim in the alternative.

## IV.   Legal Standard

### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Plaintiffs are are citizens of Puerto Rico.  Defendant Keller is a citizen of Illinois and Pennsylvania. Defendant Clondalkin Group, Inc. is a citizen of Delaware. The amount in controversy exceeds $75,000.

B. **Choice of Law**

A federal court exercising diversity jurisdiction must apply the choice-of law-rules of the forum state; here, Pennsylvania. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941). The contract in question provides that Delaware law should govern (Defs. Ex. A ¶ 7.06), and Pennsylvania courts generally honor the intent of the contracting parties to enforce choice-of-law provisions in contracts. Kruzits v. Okuma Mach. Tool, 40 F.3d 52, 55 (3d Cir. 1994). In addition, the parties do not dispute that the Court should apply Delaware law. Consequently, the Court will apply Delaware law.

B. **Standard of Review**

Summary judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an

---

[3] Amendments to Federal Rule of Civil Procedure 56 became effective on December 1, 2010. The oft-cited summary judgment standard formerly found in Rule 56(c) is now located in Rule 56(a), with one alteration: substitution of "dispute" for "issue." Fed. R. Civ. P. 56(a). The Rules Advisory Committee explained that this alteration better describes the summary judgment inquiry but does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56 Advisory Committee's note.
Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order approving the amendments, the amended version of Rule 56 governs all proceedings commenced on or after December 1, 2010, and all proceedings then pending, "insofar as just and practicable." Defendants filed their Motions after December 1, 2010. Accordingly, when necessary, the Court quotes the Rule's new language.

absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

V.     Analysis

      A.     **The Court Denies Summary Judgment on Counts I and III**

After reviewing the parties' rather voluminous filings on the Defendants' Motion for Partial Summary Judgment, the Court has decided to deny the motion as to Counts I (Breach of Contract) and III (Promissory Estoppel) for several separate reasons:

      1.     Defendants have moved only for partial summary judgment on the limited issue of contract interpretation. As such, even assuming the Court agreed with the Defendants' interpretation of the contract, the case would not be concluded. Rather, further proceedings would be necessary to determine whether there was a breach of contract and if so, what monetary or other award should follow from the ruling on the contract.

      2.     This is not a contract for the sale of a frequently encountered commodity, such as food products or manufactured goods. The Court itself, and presumably jurors, do not necessarily know what are the normally anticipated "costs" and what is involved in "collecting and selling" tax credits. The Court is not necessarily finding that these terms are ambiguous or are not ambiguous. Rather, these terms need to be flushed out in the context of the normal course and dealing of the transactions that are the subject matter of the contract. This contextual

understanding, which the Court believes may be a necessary predicate to interpreting the contract, cannot be adjudicated on summary judgment as the voluminous filings of the parties illustrate.  The briefs and appendices in this case are over four inches thick, and the Court believes that it can prepare and preside over a jury trial, and reach a verdict in the same or less time than it would take to carefully review the filings and do the appropriate research as presented by the Motion for Partial Summary Judgment.

   3. Although the Court recognizes the general Third Circuit rule on summary judgment that the Court has the duty and obligation to interpret a contract when its language is clear and unambiguous, Niagara Fire Ins. Co. v. Pepicelli, 821 F.2d 216, 220 (3d Cir. 1987) (interpreting Pennsylvania law), that rule must also be considered in connection with interpreting a contract to reflect the understanding of the parties as developed in a trial through direct and cross examination of witnesses.  As the summary judgment papers reflect, the parties differ greatly in their interpretation of what the words of the contract mean, and as noted above, the subject matter of the contract is not one frequently encountered, and the parties' citations do not disclose that any similar contract has been interpreted by any court.

For these prudential reasons, the Court believes that justice would be better served by Counts I and III being submitted to the jury under appropriate instructions of law, following the receipt of evidence of the parties explaining the background and nature of the contract.

   **B.** **The Court Grants Summary Judgment on Counts II and IV**

The Court's rationale for denying summary judgment on Counts I and III does not apply to Counts II and IV, which turn on relatively simple factual points. The Court therefore addresses these Counts separately.

### 1. Implied Covenant of Good Faith and Fair Dealing

The Court agrees with Defendants that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing cannot survive as a matter of law. The covenant of good faith and fair dealing implied in every contract allows a court to infer contractual terms into an agreement in order to address unanticipated developments or gaps in the contract's provisions. Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 441-42 (Del. 2005). Delaware courts approach the implied covenant with caution, implying contract terms only when one party acted so arbitrarily or unreasonably that the asserting party is denied the fruits reasonably expected from the bargain. Nemec v. Shrader, 991 A.2d 1120, 1126 (Del. 2010). It is well settled under Delaware law that a party to a contract cannot use the implied covenant to circumvent the express terms of the parties' bargain. Dunlap, 878 A.2d at 441. Put another way, a party cannot rely on the implied covenant to "rewrite a contract he now believes to be a bad deal." Nemec, 991 A.2d at 1126. Thus, "one generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement." Dunlap, 878 A.2d at 441.

Here, Plaintiffs base their claim for breach of this implied covenant on the amount of costs Keller deducted from net proceeds of selling the tax credits. (Pls. Br. at 13) ("Keller never told Lehigh Press that Keller was incurring $500,000 worth of costs that would be deducted . . . nor did Keller ever ask Lehigh to pay these costs."). Plaintiffs' allegations underlying the breach of the implied covenant of good faith and fair dealing are essentially identical to those supporting Plaintiffs' claim for breach of contract. Although the parties dispute the costs of "collecting," the Contract plainly provides that Keller would deduct some costs from the net proceeds of the sale. The Court therefore cannot conclude that Defendants have acted so arbitrarily or unreasonably as

to require the Court to imply additional terms into the parties' written agreement. Because the express terms of the contract address the conduct at the root of Plaintiffs' implied covenant claim, the Court will grant Defendants' Motion for Summary Judgment on Count II.

### 2. Unjust Enrichment

The Court also agrees with Defendants that Plaintiffs cannot maintain their unjust enrichment claim. Delaware courts define unjust enrichment as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." Fleer Corp. v. Topps Chewing Gum, 539 A.2d 1060, 1062 (Del. 1988). Unjust enrichment is designed to remedy the absence of a formal contract. Resnick v. Woertz, 774 F. Supp. 2d 614, 633 (D. Del. 2011). A claim for unjust enrichment, therefore, "is not available if there is a contract that governs the relationship between the parties that gave rise to the unjust enrichment claim." Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 891 (Del. Ch. 2009) (citing Wood v. Coastal States Gas Corp., 401 A.2d 932, 942 (Del. 1979)).

The Court is not persuaded by Plaintiffs' argument that this claim must survive solely because it was pleaded in the alternative. A Plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment when the validity of the contract is in doubt. Breakaway Solutions, Inc. v. Morgan Stanley & Co., Inc., No. Civ. A. 19522, 2004 WL 1949300, *14 (Del. Ch. Aug. 27, 2004). Here, however, there is no evidence, and Plaintiffs do not suggest, that the Contract did not exist or was in some way unenforceable. Because there is no dispute that the parties were operating pursuant to a valid written contract, the Court will grant summary judgment for Defendants on Plaintiff's unjust enrichment claim.

**VI.     Conclusion**

For the foregoing reasons, the Court grants Defendants' Motion for Partial Summary Judgment as to Counts II and IV, but denies it as to Counts I and III.

An appropriate order follows.[4]

O:\CIVIL 09-10\10-2872 LPPR v. Keller\10-2872 LPPR v. Keller Memo MSJ.wpd

---

[4] The Court wishes to disclose a family relationship to an Associate at the law firm Cozen O'Connor, counsel to Plaintiffs in this case. This relationship did not influence the Court's decision in this matter.