**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

L.P.P.R., INC. and LEHIGH PRESS      :      CIVIL ACTION
PHARMACEUTICAL PRODUCTS, INC.    :
                                :
            Plaintiffs,        :
        v.                  :
                                :
KELLER CRESCENT CORPORATION     :      NO.     10-2872
and CLONDALKIN GROUP, INC.        :
                                :
           Defendants.       :

**MEMORANDUM RE: POST-TRIAL MOTIONS**

**Baylson, J.**                                                      **August 31, 2012**

## I.      Introduction

After a jury trial in which a verdict was entered in favor of Plaintiffs L.P.P.R., Inc. and

Lehigh Press Pharmaceutical Products, Inc. ("LPPR") and against Defendants Keller Crescent

Corporation and Clondalkin Group, Inc.[1] ("Keller"), Keller moved to amend the judgment[2] (ECF

No. 112), and also submitted a Motion for Judgment as a Matter of Law (ECF No. 125) and a

Motion for a New Trial (ECF No. 126).  For the reasons stated below, the Court entered an Order

DENYING the Motion for Judgment as a Matter of Law and Motion for a New Trial, and

---

[1]     Defendant Clondalkin Group, Inc. guaranteed the performance of Keller Crescent Corporation, and Keller Crescent Corporation's obligations, under the Contract.

[2]     As this Court explained in its Order of April 4, 2012 (ECF No. 115), immediately following the jury trial, a civil judgment was prepared entering judgment in favor of LPPR and against Keller, in accordance with the jury's verdict.  However, the judgment was inadvertently not docketed, prompting LPPR to file a Motion for an Entry of Judgment (ECF No. 111) and Keller to file objections (ECF No. 112). The Court explained that, because of the confusion, it would treat Keller's objections as a Motion to Amend the Judgment pursuant to Fed. R. Civ. P. 59(e).

GRANTING the Motion to Amend the Judgment. (Order Re: Post-Trial Motions, ECF No. 138).

## II.   Factual Background and Procedural History

The Puerto Rico Treasury Department offers tax credits to incentivize purchasers of distressed Puerto Rican businesses to continue operations in Puerto Rico.  Through two substantially identical Asset Purchase Agreements ("the Contract"), Keller agreed to purchase assets from distressed Puerto Rican corporations, Plaintiffs L.P.P.R., Inc. and Lehigh Press Pharmaceutical Products, Inc.  The Contract also provided that Keller would sell the potential tax credit and that the parties would share the proceeds from that sale, minus the costs of "collecting and selling such tax credits."  Under the Contract, ninety percent of the net proceeds of the sale of the tax credit were allocated to LPPR and ten percent were assigned to Keller.[3]

Companies are only eligible to receive tax credits under the relevant program if they keep the acquired business open for ten years.  A company that shuts down before that time must pay the Puerto Rico Treasury Department back for a portion of the credit, determined by the number of years under ten that it did not operate.  To protect itself, the Puerto Rico Treasury Department will only issue tax credits to purchasers that guarantee their promise to remain open for ten years by posting collateral—typically, but not necessarily, a bond.

Here, Keller eventually posted a bond, obtained a tax credit, and sold it for $1,785,000.

---

[3]      The Contract language at issue reads as follows:

4.04 Tax Credits.

 (a) Seller and Purchaser hereby covenant and agree to share the net proceeds (i.e., net of costs incurred by Purchaser in connection with collecting and selling such tax credits) from the sale by Purchaser of any Industrial Investment tax credits . . . 90% of such proceeds for the account of Seller; 10% of such proceeds for the account of Purchaser.

Keller subtracted what it considered to be the costs of collecting and selling the tax credit, including $317,917 it spent to post a bond for the tax credit and $207,542 in legal fees.  Keller then transferred ninety percent of the remaining $1,133,587 to LPPR.

LPPR complained that Keller improperly subtracted those costs, and filed a Complaint in this Court, suing for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, and (4) unjust enrichment.  The Court granted summary judgment in favor of Keller on LPPR's breach of the implied covenant of good faith and fair dealing claim and unjust enrichment claim.  (Order Re: Motion for Partial Summary Judgment, ECF No. 42).

In March 2012, the Court held a trial on LPPR's breach of contract and promissory estoppel claims.  Prior to trial, Keller submitted Motions in Limine (ECF Nos. 50-54), and after holding oral argument, the Court entered an Order granting some of the relief Keller sought. (Order, ECF No. 61).  Relevant to the present Motions, the Court granted Keller's Motion in Limine to Preclude Rewriting the Contract (ECF No. 50) and Motion in Limine to Preclude Parol Evidence (ECF No. 51) and explained that "the Court made clear that the parol evidence rule would bar any testimony contracting the terms of the written contract." (Order, ECF No. 61).

At the conclusion of testimony, Keller moved for judgment as a matter of law under Fed. R. Civ. P. 50 on both counts.  3/21/12 Tr. 72:24-74:25.  The Court granted Keller's Motion as to LPPR's promissory estoppel claim.  Id. at 75:3-5, 78:22-79:1.  Only the breach of contract claim was submitted to the jury.  Id. at 75:1-3.

The Court divided the jury interrogatories into two parts.  The jury was first asked "do you find that plaintiffs have proved by a preponderance of the evidence that defendants breached

the contract by deducting the cost of the legal fees?" 3/22/12 Tr. 19:20-24.  The jury answered "No."  Id. at 19:25.  The jury was next asked "[d]o you find that plaintiffs have proven by a preponderance of the evidence that defendants breached the contract by deducting the cost of the bond premium?"  Id. at 20:1-3.  The jury answered "Yes" to this question and assigned LPPR $317,917 in damages.  Id. at 20:4-7.

Keller filed the post-trial motions listed above, LPPR responded, and the Court held oral argument on June 28, 2012.  See generally 6/28/12 Tr.  The Court then permitted the parties to submit short supplemental letter briefs.

On August 14, 2012, the Court entered an Order denying the Motion for Judgment as a Matter of Law and Motion for a New Trial, but amending the judgment, and indicated that this explanatory Memorandum would follow. (Order Re: Post-trial Motions, ECF No. 138).

## III.    Motion for a New Trial

### A.    Legal Standard

Rule 59 of the Federal Rules of Civil Procedure allows a trial court, in its discretion, to grant a new trial "on all or part of the issues in an action where there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a)(1).  For example, the Court may grant a new trial because (1) the verdict is against the weight of the evidence, (2) the damages are excessive, or (3) substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions.  See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

When the asserted basis for a new trial is trial error by the judge, "[t]he court's inquiry . . . is twofold.  It must first determine whether an error was made in the course of the trial, and then

4

must determine whether the error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." Farra v. Stanley-Bostitch, Inc., 838 F. Supp. 1021, 1026 (E.D. Pa. 1993) (citations and internal quotation marks omitted).

When the asserted basis for a new trial is the that jury verdict is against the weight of the evidence, the district court properly grants a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993) (citing EEOC v. DE Dep't of Health & Soc. Servs., 865 F.2d 1408, 1413 (3d Cir. 1989)).

Generally, the decision to grant or deny a new trial "is confided almost entirely to the discretion of the district court." Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992) (citing Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)).  Such an endeavor is not lightly undertaken, however, because it necessarily "effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts." Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir. 1960) (en banc).

**B.    Discussion**

**1.    Parol Evidence**

The primary foundation for Keller's Motion for a New Trial and Motion for Judgment as a Matter of Law is its contention that this Court wrongfully admitted parol evidence.

The Delaware parol evidence rule "provides that when two parties have made a contract and have expressed it in a writing to which they have both assented as to the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations

5

will not be admitted for the purpose of varying or contradicting the writing." Cohen v. Formula Plus, Inc., 750 F. Supp. 2d 495, 502 (D. Del. 2010) (citing Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513, 556 (Del. Super. Ct. 2005)) (internal quotation marks and alteration omitted); see also Del. Code. Ann., tit. 6, § 2-202 ("Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by course of performance, course of dealing, or usage of trade."). When writings are unambiguous, Delaware courts construe them as written, and "give language which is clear, simple, and unambiguous the force and effect required." Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 342 (Del. 1983) (citation omitted) (applying contact law to interpret a corporate bylaw).

As noted above, prior to trial Keller moved for summary judgment on the issue of contract interpretation only, contending that the Contract was unambiguous. (Defendants' Motion for Partial Summary Judgment, ECF No. 32, at 8-12). LPPR, in its response, argued that the Contract was ambiguous. (L.P.P.R. Inc. and Lehigh Press Pharmaceutical Products, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment, ECF No. 33, at 5-9). In denying Keller's Motion for Summary Judgment, the Court specified that it was "not necessarily finding that these terms are ambiguous or are not ambiguous." (Memorandum, ECF No. 41, at 7). At the hearing on Keller's Motions in Limine, however, the Court ruled that the Contract was not ambiguous because the words "collecting and selling" are "normal English words." 12/19/12 Tr. 3:24-4:8. At that time, LPPR did not press further its argument that the Contract was

ambiguous.  The Court then granted Keller's Motions <u>in Limine</u> in part.  (Order, ECF No. 61).

At trial, prompted by LPPR's proposed instruction to the jury that the Contract was ambiguous,

the Court held a conference on this issue outside the presence of the jury.  3/20/12 Tr. 77:2-88:4.

LPPR then clarified that it did still contend that the relevant section of the Contract was

ambiguous.  <u>Id.</u> at 73:4-11.  To avoid confusion, the Court reiterated its ruling that the contract

was not ambiguous, and explained that "the words in the contract are clear. 'Cost,' 'selling,' and

'collecting' are not ambiguous terms." <u>Id.</u> at 73:19-74:3, 78:23-25.  The Court accordingly

instructed the jury that the contract was unambiguous and that, as a result, "its plain meaning

alone dictates the outcome." 3/21/12 Tr. 136:15-19.

Keller now contends that the Court wrongfully admitted the following evidence extrinsic

to the unambiguous Contract: (1) testimony by Pedro Notario, a former tax advisor for the

Internal Revenue Service of Puerto Rico and LPPR's accountant and lawyer for the underlying

transaction, on his understanding of the meaning of the Contract terms; (2) testimony by Peter

Schaefer, LPPR's financial consultant, about pre-Contract negotiations; and (3) deposition

testimony by John DePaul, former Chairman of LPPR's Board, relating to pre-Contract

discussions about the expected selling price of the tax credit.  (Memorandum of Law in Support

of Defs.' Motion for New Trial Under Rule 59, ECF No. 126, at 11-22).  The Court disagrees

with Keller's fundamental argument that the Court wrongfully admitted parol evidence that

"rewrote" the Contract terms.  The evidence in dispute was admitted for necessary context and

background on this unfamiliar topic—not to contradict the written terms of the Contract.

As this Court has continually stressed, this is not a case about the sale of potatoes.  Before

this case was filed, the Court had never heard of Puerto Rican tax credits for purchasers of

distressed Puerto Rican businesses, and the Court presumes this holds true for the jurors as well. Neither did the parties cite nor could the Court find any case dealing with the relevant portion of the Puerto Rican tax code.  Puerto Rican tax credits are unique, complex, and beyond the knowledge and experience of the jury.  LPPR presented the testimony of experts on the Puerto Rican tax system—including Roberto Suarez, who drafted the relevant Puerto Rico tax statute, to explain the concept to the jury.  The Court believes that it wisely exercised its discretion in admitting this testimony, because it enabled the jury to better understand the complex subject matter of this case and to complete effectively its job of finder of fact, including, whether, as a matter of fact, Keller breached the Contract.  Both parties introduced evidence about the purpose of tax credits, how they were calculated, and how they could be bought and sold.  Because the evidence did not modify the written Contract terms, admitting it did not violate the parol evidence rule.  See, e.g., True North Composites, LLC v. Trinity Indus., Inc., 191 F. Supp. 2d 484, 514-16 (D. Del. 2002) (holding that the court did not err in admitting, in order to provide background and context, extrinsic evidence that did not contradict or vary the terms of the written agreement), aff'd in part and rev'd in part on other grounds, 65 F. App'x 266 (Fed. Cir. 2003); Wilson v. Pepper, Civ. A. No. 90C-05-016, 1995 WL 562235, at *2 n.1 (Del. Super. Ct. Aug. 21, 1995) ("The parol evidence rule does not bar testimony of [party's extrinsic oral statements] because they are entirely consistent with the sales contract.")

The Court made clear through multiple instructions to the jury that the jury could not use

the evidence to alter the written Contract terms.  First, after sustaining on parol evidence grounds

an objection to a question about the parties' pre-contract negotiations, the Court informed the

jury that:

> [I]n the contract area, the law is that when parties have reached a
> written agreement and they've signed it and it's become the
> contract, the preliminary discussions are not relevant.  That's the
> reason for my ruling.  It's the – your job is going to be to interpret
> the contract as it exists, as it was agreed to by both parties.

3/19/12 Tr. 193:19-24.

Later, when permitting LPPR's witness Peter Schaefer, an investment banker who

advised LPPR during contract negotiations, to provide some background information on the

parties's discussions in creating the Contract, the Court gave the jury the following limiting

instruction:

> And, ladies and gentlemen of the jury, let me just say this
> by way of explanation.  The final contract is the document that you
> will interpret when you deliberate, and I'm going to give you
> instructions about that.  And it's the terms of that contract that are
> binding on the parties, and you've heard – you saw what the
> contract was yesterday.  I'm not going to repeat it right now.
>      But I'm going to allow both sides, if they want, and I've –
> and I think this is consistent with what we heard yesterday, that I'm
> going to allow them to introduce some testimony about the back
> and forth of the discussions preceding the contract, just so you can
> understand the context in which the contract was formed, that is,
> the sale of these tax credits, and we have this dispute about that key
> parenthetical paragraph about deducting the cost of collecting and
> selling the tax credit.  That's – that's the key phrase.
>      So – but one of the things you have to consider is what was
> the intent of the parties and what was their understanding of what
> that term meant, and in order to do so I'm going to allow some of
> this evidence about what the back and forth discussions were.
>      But it is not admitted.  I'm going to emphasize this.  This
> testimony is not admitted to contradict the written final contract.
> That – that is the document that you're going to interpret.

> This is only to show – for the limited purpose of showing
> what a party's intent was or what their motive was and their
> understanding and things of that nature.  It is not admitted for the
> purpose of contradicting the contract.[4]

3/20/12 Tr. 21:15-22:18.

The Court reiterated these instructions when LPPR asked its witness Pedro Notario, a tax

attorney and accountant in Puerto Rico, in view of his expertise on Puerto Rican tax credits, to

opine on the meaning of the "collecting and selling" tax credits.  The Court prompted Mr.

Notario, "[t]hese words selling and collecting are normal English words, is that right?"  Id. at

19:22-23.  He agreed. 3/21/12 Tr. 19:24.  The Court then asked Mr. Notario if he could "give an

understanding in terms of tax credits without contradicting the ordinary meaning of the terms

selling and collecting?"  Id. at 20:1-3.  When Mr. Notario agreed, the Court further admonished

him that he would not be permitted to give an "absurd meaning" of those terms, for example

"say, well, sell means to buy, or collect means to throw away."  Id. at 20:6-12.  Next, the Court

gave the jury the following instruction on Mr. Notario's testimony:

> [T]hat is his understanding of the terms, and you may not consider
> that to be any contradiction of the words in the agreement because

---

[4]      Keller hangs its hat on an oft-quoted sentence in Delaware cases providing that
when a writing is unambiguous, courts should not "consider parol evidence 'to interpret it or
search for the parties' intent[ions]'." James River-Pennington, Inc. v. CRSS Capital, Inc., Civ. A.
No. 13870, 1995 WL 106554, at *5 (Del. Ch. 1995) (quoting Pellaton v. Bank of New York, 592
A.2d 473, 478 (Del. 1991) (quoting Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 342 (Del.
1983))).  The Court concludes that this language must be read in conjunction with the parol
evidence rule's prohibition on admitting evidence to vary or contradict the written terms of an
unambiguous contract.  Therefore, the Court does not consider it error to have allowed the jury to
consider the parties' intent for a purpose other than contradicting the Contract terms.  If it were
error, however, the Court concludes that it did not prejudice Keller because the jury instructions
on the whole unequivocally directed the jury to apply the plain, ordinary meaning of the Contract
terms and to not use the background evidence to modify, vary, or contradict the explicit Contract
language.

> we're all bound by that selling – the cost of selling and
> collecting . . . . [T]hose are English words and I'm going to give
> you my instructions a little later where I'm going to tell you, you
> have to accept that and you must disregard any attempts to change
> the ordinary meaning of those words.

Id. at 21:5-15.

The Court's final charge to the jury reinforced these tenets of contract interpretation, instructing the jury that "contract terms themselves will be controlling" and to "ascribe to the words of a contract their common or ordinary meaning, and interpret them as would an objectively, reasonable third-party observer." Id. at 136:21-25. The Court also specified that "cost, collecting, and selling" are "US English words, and each must be given their plain and ordinary meaning." Id. at 136:1-3.

The Court then gave one final instruction not to use any admitted testimony to contradict the written contract terms:

> Contract law does not allow the parties to offer any
> evidence of the purposes of – excuse me – contract law does not
> allow the parties to offer any evidence for the purpose of
> contradicting or changing the terms of an unambiguous agreement.
> The testimony you have heard in the case may not be used or
> considered by you to alter, change, or modify the terms of the
> agreement in determining whether Keller breached the agreement.
> However, you may use the testimony that you found credible to
> determine the background, the context, the intent of the parties, and
> their understanding of the terms of the agreement.

3/21/12 Tr. 137:22-138:5.

Because no evidence was admitted to negate the written Contract terms, this case is distinguishable from Advanced Medical, Inc. v. Arden Medical Systems, Inc., 955 F.2d 188 (3d Cir. 1992)—the Third Circuit case Keller claims requires this Court to grant a new trial. There,

the written contract stated that the plaintiff's territory to distribute medical products

manufactured by one of the defendants was exclusive in some venues, but "not exclusive in

physical offices of clinics." Id. at 197.  Despite this explicit language, the district court admitted

evidence of a pre-contractual understanding that the plaintiff would in fact have exclusive rights

to physicians and clinics after it terminated a contractual relationship with another party.  Id.  The

Third Circuit applied the Minnesota parol evidence rule, which, like Delaware's rule, prohibited

use of parol evidence "to vary, contradict, or alter the written agreement." Id. at 195 (quoting

LeNeave v. N. Am. Life Assurance Co., 854 F.2d 317, 320 (8th Cir. 1988)).  Noting that the

plaintiff conceded that nothing in the written agreement "in any . . . way suggest[ed] that [the

plaintiff's] non-exclusive rights to physicians and clinics would somehow become exclusive at a

later date," the Third Circuit held that the district court erred in admitting the contradictory

evidence.  Id. at 197.  Because the parol evidence rule also bars evidence of additional terms to a

complete, unambiguous agreement, the Third Circuit additionally held that the district court

wrongfully admitted parol evidence about whether the plaintiff had an exclusive right to sell to

certain middlemen, about which the contract was silent.  Id. at 197-99.  In view of these

violations of the parol evidence rule, the Third Circuit remanded for a new trial.  Id. at 199-200.

        In the present case, however, as emphasized above, the evidence in question was not

admitted to alter the terms of the written agreement or to create a new term not present on the

face of the Contract.  Instead, in view of the fact that Puerto Rican tax credits—unlike medical

equipment—are outside the scope of the jury's knowledge, the Court properly admitted the

relevant testimony as background to aid the jury in fulfilling its role as fact finder.  Advanced

Medical therefore does not compel this Court to grant a new trial.

Similarly, in post-argument briefing, Keller cited many cases applying Delaware law to support its position.  Yet, in none of those cases was the trial judge reversed for merely admitting background or context evidence that did not contradict the terms of an unambiguous written contract, specifically involving evidence explaining a corporate transaction.  See, e.g., Pellaton v. Bank of New York, 592 A.2d 473, 478-79 (Del. 1991) (trial court erred in admitting parol evidence that varied and contradicted the express terms of an unambiguous writing); Scott v. Land Lords, Inc., 616 A.2d 1214 (Table), 1992 WL 276429, at *3 (Del. 1992) (trial court erred in admitting extrinsic evidence intended to "substantially modify, if not remove," an entire paragraph from the written agreement); City Investing Co. Liquidating Trust v. Cont'l Cas. Co., 624 A.2d 1191, 1198 (Del. 1993) ("The Court of Chancery correctly declined admission of parol evidence to vary the clear meaning of . . . [the] Agreement.").  Further, none of the cases Keller cited involved a unique and complex corporate transaction where expert testimony was necessary to explain the statutory background to the transaction.

This Court holds that it properly admitted explanatory and contextual testimony that did not add to, modify, or contradict the written terms of the Contract.  Consequently, the Court DENIED Keller's motion for a new trial on parol evidence grounds.

### 2.      Other Grounds

Like Keller's parol evidence arguments, the other arguments Keller presents to support its Motion fail to convince this Court that a new trial is warranted.

### a.      "Fair, Customary, and Reasonable"

Keller argues that the Court should grant a new trial because the Court used the words

"fair, customary, and reasonable" in the following instruction to the jury:

> In deciding whether the legal fees or the bond costs were
> costs incurred by purchaser in connection with ["]collecting and
> selling["] such tax credits, you can consider whether it would be
> fair, customary, and reasonable to say those costs were costs
> incurred by a purchaser in connection with ["]collecting and
> selling["] such tax credits. And you'll see every time I use that
> phrase, I have put it in quotation marks, because it comes directly
> from the agreement itself.

3/21/12 Tr. 137:1-8.  The Court holds that it was not error to include these terms in its charge,

nor did it prejudice Keller.

Delaware law provides for the reasonable interpretation of contracts. <u>See, e.g.,</u> <u>Crum &</u>

<u>Crum Enterprises, Inc. v. NDC of CA, L.P.</u>, No. 09-cv-145, 2010 WL 4668456, at *4 (D. Del.

Nov. 3, 2010) (explaining that "Delaware adheres to the objective theory of contract

interpretation" - <u>i.e.</u> "[w]hen construing basic contractual terms, the court ascribes to the words

their common or ordinary meaning, and interprets them as would an objectively reasonable

third-party observer.") (citations and internal quotation marks omitted).  Even Keller concedes

this to a certain degree.  <u>See</u> 3/21/12 Tr. 63:3-5 (acknowledging the concept of the "objectively

reasonable third party observer" in interpreting the meaning of the contract language);

(Defendants' Proposed Jury Instructions, ECF No. 65, at 35) (quoting <u>AT&T Corp. v. Lillis</u>, 953

A.2d 241, 252-53 (Del. 2008) ("The true test is not what the parties to the contract intended it to

mean, but what a <u>reasonable person</u> in the position of the parties would have thought it meant."))

(emphasis added).  The Court therefore cannot find that it was wrong to include the concept of

reasonableness in its instructions.

What is more, Keller's specific concern about the instruction never came to pass.  Keller worried that the jury might decide that the fees charged by Keller's attorneys were unreasonable—i.e. that Keller should have hired a cheaper lawyer. 3/21/12 Tr. 63:19-21.  LPPR never argued that Keller should have hired a different lawyer, and, more importantly, the jury found that Keller did not breach the contract by subtracting attorneys' fees.  3/22/12 Tr. 19:20-25.

The Court additionally concludes that, considered in their totality, the jury charge gave clear instructions to consider whether the attorneys' fees and bond premium were "costs incurred by Purchaser in connection with collecting and selling such tax credits," as those words meant in the unambiguous Contract.  Hurley v. Atl. City Police Dep't, 174 F.3d 95, 115 (3d Cir. 1999) (Third Circuit "review[s] jury instructions to determine whether, 'taken as a whole, they properly apprised the jury of the issues and the applicable law.'" (quoting Dressler v. Busch Entm't Corp., 143 F.3d 778, 780 (3d Cir. 1998))).  For these reasons, the Court finds that it was not error to instruct the jury as it did, and, moreover, that even if it were error, the instructions on the whole cured any prejudice to Keller.

### b.    "Ethics" and "Bad Faith"

Keller argues that a new trial is in order because the Court permitted testimony by Mr. DePaul that the conduct of Paul Hogan, Keller's representative, was "unethical" and the testimony of William Love, LPPR's former Chief Financial Officer, about an e-mail in which he accused Mr. Hogan of acting "in bad faith."  See 3/20/12 Tr. 220:19-222:11; 3/19/12 Tr. 223:24-224:5.  Despite overruling Keller's objection during trial, the Court offered to charge the jury

about Mr. Love's ethics commentary.  Keller did not, however, submit a proposed charge or otherwise request that the Court specifically instruct the jury about this issue.  See 3/20/12 Tr. 150:5-10.  Having declined the Court's invitation to instruct the jury on this topic, which could have cured any possible prejudicial effect of that testimony, Keller cannot now complain that the testimony prejudiced it to the point that a new trial is in order. "It is well settled that a person's failure to make a timely request for a limiting instruction operates as a waiver of any objection to the lack of such instruction." United States v. Mathis, No. 91–cr-595–10, 1993 WL 512798, at *1 (E.D. Pa. Dec. 6, 1993) (citing Staniewicz v. Beecham, Inc., 687 F.2d 754 (1st Cir. 1982)); see also Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 526 (3d Cir. 2003) (concluding that plaintiff waived argument that danger of unfair prejudiced outweighed probative value of evidence in part because he did not "request a limiting instruction at trial which could have cured such prejudice.").  Moreover, this Court is not of the view that it was error to admit this testimony, in which the witnesses simply described their reactions to Mr. Hogan's behavior, or that it prejudiced Keller such that failure to grant a new trial would be inconsistent with substantial justice.

### c.    Promissory Estoppel

Keller also contends that a new trial is warranted because the Court permitted the jury to hear evidence and argument related to LPPR's promissory estoppel claim.  Although this Court declined to grant summary judgment on this claim for the reasons set forth in its September 30, 2012 Memorandum (ECF No. 41), at the conclusion of the trial testimony, the Court granted Keller's Rule 50 Motion for Judgment as a Matter of Law on the promissory estoppel claim. 3/21/12 Tr. 78:22-79:2.  As such, the promissory estoppel claim never went before the jury.

Keller cannot appeal a decision in its favor. <u>See, e.g.,</u> <u>Hayduk v. City of Johnstown</u>, 386

F. App'x 55, 63 (3d Cir. 2010) ("[A] prevailing party ordinarily may not appeal a judgment in its

favor for lack of standing."). It therefore appears LPPR is primarily concerned that a string of e-

mails introduced as LPPR's Exhibit 16 "clogged [the case] with irrelevant testimony,"

supposedly confusing the jury and prejudicing Keller. (<u>See</u> Memo. of Law in Support of Defs.'

Motion for New Trial Under Rule 59, ECF No. 126, at 32). This does not justify a new trial.

Keller in fact relied on the e-mail chain to prove LPPR consented to the sale of the tax credit, as

required by the Contract. 3/19/12 Tr. 245:20-246:24. In view of these circumstances, the Court

cannot find that it was error to admit LPPR's Exhibit 16 and attendant testimony, nor that Keller

was prejudiced by it.

### d.    Reference to Mr. DePaul's Cancer

In his opening statement, counsel for LPPR explained that LPPR's former chairman, Mr.

DePaul, would not appear in court to testify because "[h]e's seriously ill with cancer." Keller

moved for a mistrial, which this Court denied. 3/19/12 Tr. 49:6-50:1. At the conclusion of the

case, the Court instructed the jury, among other things, that the law does not permit them to be

"governed by sympathy," that they should "reach a just verdict regardless of the consequences,"

and that the statements and argument of lawyers are not evidence. 3/21/12 Tr. 131:21-25,

132:10-12. Additionally, because the parties agreed Mr. DePaul was unavailable and that his

deposition would be read into the record, the Court itself explained to the jury that "we're going

to have a deposition read of this Mr. DePaul who's too ill to be here," and Keller made no

objection. 3/20/12 Tr. 141:12-13. The Court cautioned the jury that "there was some reference

made to why Mr. DePaul's not here, and that is not really relevant." <u>Id.</u> at 203:15-16. The Court

further explained, "when anybody is indisposed or unable to come to court and they've been deposed, the rule is that we read the deposition into the record as if the witness were here." Id. at 203:17-19.  The Court then reiterated "the reason why he's not here is not relevant, and you should not consider anything that was said as to why he's not here." Id. at 203:20-22.

The Court presumes the jury followed its instructions.  Zafiro v. United States, 506 U.S. 534, 540-41 (1993) ("even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and 'juries are presumed to follow their instructions.'" (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987))).  The abundance of cautionary instructions cured any prejudice to Keller from the reference to Mr. DePaul's cancer, rendering a new trial unnecessary. See id.

### e.   Weight of the Evidence

Finally, Keller argues that the verdict was against the weight of the evidence.  As detailed below in the discussion of Keller's Motion for Judgment as a Matter of Law, there was sufficient evidence to support the jury's verdict that Keller violated the Contract by subtracting the cost of the bond premium before remitting to LPPR ninety percent of the proceeds of the sale of the tax credit.  No "miscarriage of justice" would result should this verdict stand.  See Klein, 992 F.2d at 1290.  The verdict on liability here was not so against the weight of the evidence as to merit the exercise of the Court's discretion to grant a new trial.

For these reasons, the Court concluded that Keller did not meet its burden under Rule 59, and DENIED Keller's Motion for a New Trial.

**IV.     Motion for Judgment as a Matter of Law**

   **A.     Legal Standard**

Judgment as a matter of law may be granted pursuant to Federal Rule of Civil Procedure

50(b) when "the court finds that a reasonable jury would not have a legally sufficient evidentiary

basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). There must be more than a

"scintilla of evidence . . . to sustain a verdict of liability." Lightning Lube, Inc. v. Witco Corp., 4

F.3d 1153, 1166 (3d Cir. 1993). Nevertheless, "judgment as a matter of law should be granted

sparingly"—only "where the record is critically deficient of the minimum quantum of evidence

in support of the verdict." Eshelman v. Agere Sys., Inc., 554 F.3d 426, 433 (3d Cir. 2009)

(quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)) (internal

quotation marks omitted).

   In conducting its analysis, the Court must "view[ ] the evidence in the light most

favorable to the non[-]movant and giv[e] [him] the advantage of every fair and reasonable

inference." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 n.8 (3d Cir. 2009). The Court may

not "weigh the evidence, determine the credibility of witnesses, or substitute its version of the

facts for the jury's version." Id. (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171,

190 (3d Cir. 1992)). Indeed, the Court must "disregard all evidence favorable to the moving

party that the jury is not required to believe." Springer v. Henry, 435 F.3d 268, 281 (3d Cir.

2006) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)). The

relevant inquiry "is not whether there is literally no evidence supporting the party against whom

the motion is directed but whether there is evidence upon which the jury could properly find a

verdict for that party." Jaasma v. Shell Oil Co., 412 F.3d 501, 503-04 (3d Cir. 2005) (citations

omitted).

### B.    Discussion

Keller's parol evidence objection also underlies its Judgment as a Matter of Law Motion; because Keller believes all evidence in LPPR's favor was admitted in error, it argues that LPPR failed to introduce even a "scintilla" of admissible evidence to prove that the bond was not a cost of "collecting and selling" the tax credit.  Above, the Court detailed why the parol evidence rule does not bar the evidence about which Keller complains.  Keeping this evidence under consideration, then, the Court easily concludes that the evidence, viewed in the light most favorable to LPPR, was sufficient to support the jury's verdict on liability in favor of LPPR.

LPPR did not dispute—and indeed Mr. Love, its representative, testified—that before Keller could "complete the process of collecting and selling, Keller had to acquire a bond." 3/19/12 Tr. 237:24-238:2.  Keller argues that this necessarily means that the bond cost was a cost of "collecting and selling" the tax credits.  The jury, however, was entitled to reach a different conclusion. See, e.g., Hayduk, 386 F. App'x at 63 ("[J]ust because that evidence may have been sufficient to support a jury finding in [a party's] favor does not mean that it necessarily required as much.").

First, although some kind of collateral was required to obtain a tax credit, Mr. Suarez testified that a bond was not the only acceptable form of collateral.  3/20/12 Tr. 101:24-102:3; 3/19/12 Tr. 238:17-23.  Cash, a letter of credit, or a corporate guarantee, could possibly have satisfied the Puerto Rico Treasury Department. Id. at 102:3-15.  What is more, Keller had not yet even made most of the bond premium payments it deducted; rather, Keller based its deduction on its it projection that the bond premium would cost $340,000 over a ten year period.  3/19/12 Tr.

20

165:8-19, 238:25-239:12. The jury could have reasonably concluded from this evidence that the over $300,000 Keller subtracted for the bond premium was not a cost "incurred by Purchaser in connection with collecting and selling such tax credits."

The jury also heard Mr. DePaul's testimony that the bond premium was not a cost "incurred in collecting and selling the tax credit," but rather was simply "a cost of buying the company," to be borne by Keller alone. 3/19/12 Tr. 250:6-8, 253:1-4; 3/20/12 Tr. 227:3-5. Mr. DePaul's explanation of why LPPR would not help Keller post collateral for the tax credit bolsters his testimony that the bond was not a cost under the Contract. When asked why he would have refused to "post the collateral or share in the posting of the collateral," Mr. DePaul replied

> Well, what you're asking me is to post collateral of a million dollars that Mr. Hogan will keep the plant open for the next ten years . . . . How – how would I control whether he kept the plant open for ten years or not? What businessperson would have ever done that, would be beyond me.

3/21/12 Tr. 228:25-229:6. The jury was entitled to credit this testimony and infer from Mr. DePaul's explanation that the premium for the bond Keller posted in promise that it would continue operations in Puerto Rico for a decade were not costs of "collecting and selling."

The dearth of authority describing the process of obtaining tax credits as "collecting" those credits also supports the jury's verdict. The word "collect" is not included in the law or regulations relating to the tax credit. 3/21/12 Tr. 18:8-13. The statute instead describes the process as "claiming the credits." 3/20/12 Tr. 91:14-17. Mr. Notario, who, among other qualifications, is a former tax advisor for the Internal Revenue Service of Puerto Rico who responsible for reviewing the type of requests submitted in this case, testified that he never used

the word "collect" to describe the process of getting a tax credit because "[y]ou cannot collect any money from the government of Puerto Rico under these programs." 3/21/12 Tr. 16:23-17:13, 18:14-19.  Mr. Notario testified that any "collecting" could not take place until the administrative decision approved the tax credit, allowing the party receiving the credit to sell the credit to a third party and collect the proceeds of the sale.  Id. at 17:19-22, 20:16-21:2.  Mr. Notario then specifically opined that, applying the plain meaning of the contract terms, the bond premium is not a cost of "collecting" because "the bond is a requirement prior to having the tax credit certified." Id. at 22:4-12.

Other evidence in the record also supported the jury's conclusion that the bond premium was not a cost of "collecting and selling" the tax credit.  The Puerto Rico Treasury Department, Keller's representative Mr. Hogan, and Keller's attorneys also used terms other than "collecting" to describe the process of obtaining the credit, including "claim" and "secure," "grant," and "issue."  See, e.g., 3/19/12 Tr. 159:7-10, 161:16-19; 3/20/12 Tr. 91:14-20, 92:8-17, 93:10-22, 95:12-16, 100:18-25, 108:18-109:19.  The jury could have found particularly persuasive the e-mail in which Keller's attorney forecasted what he called "the costs of securing and selling the tax credits." 3/19/12 Tr. 158:8-14, 159:7-10 (emphasis added).  Because it heard testimony that the bond had to be posted before the tax credit could issue, the jury may also have been swayed by Mr. Hogan's statement that something must exist before it can be "collected."  3/19/12 Tr. 237:14-238:2; 3/21/12 Tr. 48:25-49:2.

Even if other reasonable people might have come to a different conclusion, there is ample evidence in the record from which the jury could have concluded that the bond premium was not a "cost[] incurred by Purchaser in connection with collecting and selling such tax credits."  The

jury competently carried out its job as fact-finder to determine whether Keller breached the contract by subtracting its attorneys' fees and bond premium before remitting ninety percent of the proceeds of the tax credit sale to LPPR, and this Court will not disturb its well-supported verdict.

Keller did not satisfy its burden under Rule 50, and its Motion for Judgment as a Matter of Law was consequently DENIED.

## IV.   Motion to Amend the Verdict

### A.   Legal Standard

Courts must defer to the jury's damages award if there is "any rational basis for the verdict." Berger v. Zeghibe, No. 08-cv-5861, 2010 WL 3928621, at *2 (E.D. Pa. Oct. 6, 2010) (quoting Bhaya v. Westinghouse Elec. Corp., 832 F.2d 258, 259 (3d Cir. 1987)). A "court may not vacate or reduce the award merely because it would have granted a lesser amount of damages." Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989) (emphasis in original). The jury's award is to be upheld "if there exists a reasonable basis to do so." Id. (citing Nairn v. National Railroad Passenger Corp., 837 F.2d 565, 570 (2d Cir. 1988)). Indeed, courts "must be extremely reluctant to interfere with the time-honored power of the jury, in the exercise of its collective judgment, to assess the damages sustained by the plaintiff." Billebault v. Dibattiste, No. 96-cv-6501, 1999 WL 191648, at *8 (E.D. Pa. March 29, 1999) (quoting Tann v. Servs. Distributors, Inc., 56 F.R.D. 593, 598 (E.D. Pa. 1972)) (internal quotation marks omitted).

However, if a court believes a jury's award is unreasonable in light of the facts, it may remit the award. Cortez v. Trans Union, LLC, 617 F.3d 688, 716 (3d Cir. 2010). "A jury's

23

award of damages can only be reduced to the highest dollar amount that the jury could have

properly awarded." <u>Young v. Lukens Steel Co.</u>, 881 F. Supp. 962, 976 (E.D. Pa. 1992) (citations

omitted).  In particular, "jury verdicts can be disturbed when they are subject to mathematical

calculations and there is a clear error in the calculation." Id. (citations omitted); see also Chuy v.

Philadelphia Eagles Football Club, 595 F.2d 1265, 1279 n.19 (3d Cir. 1979) ("When a damage

award is not liquidated or susceptible to a mathematical formula, courts are reluctant to disturb

the resultant measure [of damages]." (emphasis added)); Maylie v. Nat'l Railroad Passenger

Corp., 791 F. Supp. 477, 482 (E.D. Pa. 1992) (Pollak, J.) (offering plaintiff opportunity to remit

damages where the damages award was not supported by the evidence but instead it seemed

"likely that the jury simply erred in its calculation").

### B.      Discussion

Keller moves to amend the judgment under Federal Rule of Civil Procedure 59(e) on the

ground that there is a "need to correct a clear error of law or fact or to prevent manifest

injustice." Fed. R. Civ. P. 59(e)(3).  Specifically, Keller contends that the judgment should be

reduced from $317,917 to $286,125.30. The $317,917 is equivalent to the full cost of the bond

premium Keller deducted from the proceeds of the sale of the tax credit.

Keller argues that the jury's award should be discounted by ten percent because the

contract gave LPPR only ninety percent of the net proceeds of the sale of the tax credit.  Keller

insists that the jury's award must be a calculation error—<u>i.e.</u> the jurors simply forgot to subtract

the ten percent from the total amount of the bond premium.  LPPR acknowledges that it was only

entitled to ninety percent of the net proceeds of the sale, but argues that the jury's verdict should

nonetheless stand.  LPPR contends that under the breach of contract count it could have

recovered up to $472,913, and the jury's verdict of less than that amount could represent a valid compromise.

The Court agrees with Keller that the judgment must be reduced.  Although there was only one count before the jury, the interrogatories divided that count into two parts: attorneys' fees and bond premium.  After the jury determined that Keller had not breached the contract by subtracting attorneys' fees, but had breached the contract by subtracting the bond premium, the highest amount the jury could have awarded LPPR under the evidence presented was the cost of the bond premium, underline(discounted by ten percent).

The damages in this case were liquidated and susceptible to a mathematical formula.  See Chuy, 595 F.2d at 1279 n.19.  In awarding the full amount of the bond premium, it is clear the jury simply forgot to adjust by ten percent as the contract provided.  This is exactly the type of obvious calculation error that the Court must correct.  Indeed, at trial, LPPR consistently acknowledged that it was owed only ninety percent of the proceeds of the tax credit, minus the contested costs "of collecting and selling."  See, e.g., 3/19/12 Tr. 224:6-13 (testimony of Mr. Love stating that total damages sought represents "the legal fees and the bond costs that they tried to pass onto us times ninety percent."); 3/21/12 Tr. 87:16-19 (counsel stating in closing argument "[s]o every single dollar of deduction that you find to be improper . . . every one of those dollars has a 90 cent effect on Lehigh Press in a negative way."); Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 235 (3d Cir. 1998) ("an admission of counsel during the course of trial is binding on his client" (quoting Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972))).

The Court is unpersuaded by LPPR's arguments that the jury could have awarded up to

$472,913—which represents the full cost of the bond premium and attorneys' fees, both discounted by ten percent—and that the verdict could represent a compromise. There is no escaping the fact that the jury determined that Keller did not breach the contract by subtracting its attorneys' fees. With this in mind, the maximum award supported by the evidence on the bond premium was $286,125.30. To let the judgment of $317,917 stand, simply because of the jury's calculation error, would be a manifest injustice. The Court therefore GRANTED Keller's Motion to Amend the Judgment, vacated the previous Order entering a judgment of $317,917, and entered judgment for LPPR for $286,125.30.[5]

## V.   Conclusion

An appropriate Order denying Keller's Motion for Judgment as a Matter of Law and Motion for a New Trial, and granting Keller's Motion to Amend the Judgment, was already entered.

Date: August 31, 2012

/s/ Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL 10\10-2872 LPPR v. Keller\10cv2872.Memo re Post Trial Motions.wpd

---

[5]     After the Court entered the Order Re: Post-trial Motions (ECF No. 138), LPPR filed a Motion to Mold the Amended Judgment to Include Interest (ECF No. 141). Keller has advised that it does not oppose the Motion. Therefore, the Motion will be granted in a separate Order.